IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

DEVON FRYE,

    **Plaintiff,**

**v.**                                                                   Civil Action No. 3:24cv641

**JASON WILSON,** *et al.***,**

    **Defendants.**

## MEMORANDUM OPINION

Devon Frye, a Virginia detainee proceeding *pro se* and *in forma pauperis*, filed this civil action pursuant to 42 U.S.C. § 1983.[1] The matter is now before the Court on the Motion to Dismiss filed by Defendants Jason Wilson, Sanita Rhodes, and Nathan Moore ("Defendants") (ECF No. 8) and the Court's screening obligations under 28 U.S.C. § 1915(e)(2). Defendants provided Frye with an appropriate *Roseboro* notice.[2] (ECF No. 10.) Frye has filed a Response (ECF No. 14), and the time for Defendants to file a reply has now passed. The Court thus deems the Motion to Dismiss ready for consideration. For the reasons stated below, the Motion to Dismiss will be GRANTED.

---

[1] The statute provides, in pertinent part:

> Every person who, under color of any statute . . . of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

42 U.S.C. § 1983.

[2] *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975).

## I. Legal Standard

Pursuant to the Prison Litigation Reform Act ("PLRA"), this Court must dismiss any action filed by a prisoner if the Court determines the action (1) "is frivolous" or (2) "fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2); *see* 28 U.S.C. § 1915A. The first standard includes claims based upon "an indisputably meritless legal theory," or claims where the "factual contentions are clearly baseless." *Clay v. Yates*, 809 F. Supp. 417, 427 (E.D. Va. 1992) (quoting *Neitzke v. Williams*, 490 U.S. 319, 327 (1989)). The second standard is the familiar standard for a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993); *see also Martin*, 980 F.2d at 952. This principle applies only to factual allegations, however, and "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

The Federal Rules of Civil Procedure "require[] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (second alteration in original) (citation omitted). Plaintiffs cannot

satisfy this standard with complaints containing only "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Id.* (citations omitted). Instead, a plaintiff must allege facts sufficient "to raise a right to relief above the speculative level," *id.* (citation omitted), stating a claim that is "plausible on its face," *id.* at 570, rather than merely "conceivable." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp.*, 550 U.S. at 556). In order for a claim or complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003) (citing *Dickson v. Microsoft Corp.*, 309 F.3d 193, 213 (4th Cir. 2002); *Iodice v. United States*, 289 F.3d 270, 281 (4th Cir. 2002)). Lastly, while the Court liberally construes *pro se* complaints, *Gordon v. Leeke,* 574 F.2d 1147, 1151 (4th Cir. 1978), it will not act as the inmate's advocate and develop, *sua sponte*, statutory and constitutional claims that the inmate failed to clearly raise on the face of his or her complaint. *See Brock v. Carroll*, 107 F.3d 241, 243 (4th Cir. 1997) (Luttig, J., concurring); *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

"If, on a motion under Rule 12(b)(6) . . . , matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d); *Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985). However, "a court may consider official public records, documents central to plaintiff's claim, and documents sufficiently referred to in the complaint [without converting a Rule 12(b)(6) motion into one for summary judgment] so long as the authenticity of these documents

is not disputed." *Witthohn v. Fed. Ins. Co.*, 164 F. App'x 395, 396–97 (4th Cir. 2006) (citations omitted).

Here, in support of their Motion, Defendants rely on at least one exhibit attached to the Complaint: a June 18, 2024 response to a complaint Frye filed about contacting or interacting with religious ministers of his choosing. (ECF No. 1-5.) Frye refers to this document and others—including institutional policies (ECF No. 1-3; ECF No. 1-7; ECF No. 1-8)—in the Complaint. Because these materials are "integral to and explicitly relied on in the complaint," *Robinson v. Am. Honda Motor Co.*, 551 F.3d 218, 222 (4th Cir. 2009) (citation omitted), the Court will consider them in assessing the Motion to Dismiss.

## II. The Complaint

### A. Frye's Allegations

Frye is civilly committed in the Virginia Center for Behavioral Rehabilitation ("VCBR"). (ECF No. 1-2, at 1.) In his Complaint, Frye alleges as follows:[3]

1. At all times relevant to this case the plaintiff, Devon Frye, was a civilly committed detainee at VCBR.
2. At all times relevant to this case there were no religious services being offered at VCBR due to lack of volunteers.
3. On 5/28/24 the plaintiff contact[ed] Facility Director Jason Wilson via Digital GTL Request (#45248421) informing him that he wished to exercise his right to spiritual counseling, and that his wife was the ordained minister who would serve as his spiritual counselor. He emphasized the fact that conversations with ministers are privileged.
4. Virginia Code 12 VAC 35-115-50 (subsection B; #4) states that the plaintiff has the right to have opportunities to communicate in private with lawyers, judges, legislators, clergy, licensed health care practitioners, authorized representatives, advocates, the inspector general, and employees of the protection and advocacy agency. These are the "protected categories."
5. Jason Wilson stated that the plaintiff's wife couldn't be his spiritual counselor because she was a former VCBR employee.

---

[3] The Court employs the pagination assigned by the CM/ECF docketing system and corrects the capitalization, spelling, and punctuation in quotations from Frye's submissions. The Court omits Frye's citations to exhibits filed with the Complaint.

4

6. Plaintiff filed a formal complaint against Jason Wilson.
7. Complaint was responded to and denied by Defendant Sanita Rhodes on 6/11/24.
8. Plaintiff filed [an] appeal to complaint denial, which went to Jason Wilson for review, who
9. Subsequently denied the appeal.
   Plaintiff filed a final appeal with the State Human Rights Committee.
   On 5/31/24, the plaintiff again contacted Jason Wilson via Digital GTL Request (#453381641) to reiterate that there was no exemption to his right with regards to the "protected categories" and the privilege allowed. Also reiterated his wish to exercise his rights. Mr. Wilson asked for the names and religious affiliations of Mr. Frye's clergy members, and if they had been otherwise suspended from the Nottoway campus or from VCBR communication platforms.
10. On 6/5/24, Jason Wilson informed Mr. Frye via Digital GTL Request (#45358741) that his wife was not permitted facility access or use of VCBR communication platforms, and the other listed clergy member could visit, but he would not be allowed private phone calls with him because he was not an existing volunteer / service partner.
11. On 5/28/24, the plaintiff contacted Chief of Security, Nathan Moore, via Digital GTL Request (#452488301) to inform him that his wife was an ordained minister, and his spiritual counselor. This qualified her to be listed under the "protected categories," which makes their calls privileged. Mr. Moore stated that the plaintiff's wife was a former VCBR employee, and that her status as an ordained minister didn't change VCBR policy. Mr. Moore stated that her number would not be added to the list of numbers not recorded / reviewed.
12. On 5/28/24, the plaintiff contacted Compliance Director, Sanita Rhodes, via Digital GTL Request (#452534141) to inform her that his wife was an ordained minister, whom he'd chosen as his spiritual counselor. Ms. Rhodes replied that she had addressed this issue when Mr. Frye submitted his formal complaint. Ms. Rhodes states that Facility Instruction 214 states [that] the minister has to be approved by VCBR before adding to the phone system as clergy.
13. On 6/18/24, the plaintiff again contacted Ms. Rhodes via Digital GTL Request (#459148961) and states that issues involving religion are governed by Facility Instruction 219. According to Facility Instruction 219 the plaintiff is prohibited from one-on-one telephone conversations with volunteers. According to Facility Instruction 214 any clergy associated with VCBR is a volunteer. Therefore by VCBR's own policy they cannot offer their clergy to me for spiritual leadership and counsel, nor afford me the rights I'm entitled to under the "protected categories."
14. Facility Instruction 219 states the following: (on page #5 of FI219) "Residents are expected to maintain appropriate boundaries with volunteers. Violations of the below rules may result in restriction from all volunteer services, including group services and study group services and

5

> study groups with volunteers. Volunteer services boundary guidelines: residents are prohibited from making one-on-one contact with volunteers via telephone, to include, third party telephone calls; the Volunteer Services Coordinator shall provide residents with a list of volunteers that are approved to correspond by mail with residents; upon receipt of mail from a resident, the volunteer shall provide the Volunteer Services Coordinator a copy of the correspondence; the Volunteer Services Coordinator shall consult with the resident's treatment team to determine if any of the correspondence is counter-therapeutic to resident's progress in treatment."

(ECF No. 1-2, at 1–3.)

### B. Documents Submitted with the Complaint

Frye refers to two VCBR policies—or "Facility Instructions"—in the Complaint. (*See* ECF No. 1-7 ("FI 214"); ECF No. 1-8 ("FI 219").) These policies contain several provisions relevant to Frye's claims. For instance, FI 214 defines a clergy member as "[a]n individual ordained for religious duty for which the resident has indicated their affiliation . . . and [who] is approved to provide volunteer services at VCBR." (*See* ECF No. 1-7, at 2.) It further provides that approved clergy members belong to a "protected category" of individuals whose phone calls with detainees may not be monitored. (ECF No. 1-7, at 5.) Detainees may request that other phone numbers be added to the "protected category" list, but these requests are subject to review and approval by VCBR staff. (ECF No. 1-7, at 5.) FI 214 also identifies those individuals whose phone numbers are blocked within VCBR. (*See* ECF No. 1-7, at 8). The phone numbers of former VCBR employees, for instance, are added to a block list so that detainees are not able to contact them. (ECF No. 1-7, at 8.)

Frye also refers in the Complaint to Defendant Wilson's response to his appeal of a denied internal grievance. (*See* ECF No. 1-5.) In the response, Defendant Wilson confirms that Frye's wife, a former VCBR employee, was not permitted to visit the facility. (ECF No. 1-5.) He makes clear, however, that a "family member" Frye also identified as a clergy member would

6

be permitted to visit the facility and that he and Frye would be permitted to use the visitation room, which "allows privacy." (ECF No. 1-5.)

### C. Frye's Requested Relief and Legal Claims

Frye requests monetary damages, a declaration that Defendants' actions "violate[d] his rights under the Constitution and laws of the United States," and "a preliminary and permanent injunction ordering Defendants to allow plaintiff access to chosen spiritual leadership free of religious censorship." (ECF No. 1, at 5.)

He identifies the following claims for relief:

| | |
|---|---|
| Claim One | Defendant Wilson violated Frye's rights under the First Amendment[4] "by denying him the right to choose his own spiritual leadership, and by denying him the privileged right [to] private phone communication with spiritual leadership." (ECF No. 1-2 ¶ 15.) |
| Claim Two | Defendant Wilson violated Frye's rights under the First Amendment "by allowing the implementation of two facility policies that conflict and contradict each other, and ultimately cause a denial of privileged telephone communication with spiritual leadership." (ECF No. 1-2 ¶ 16.) |
| Claim Three | Defendant Wilson violated Frye's rights under the Fourteenth Amendment "by responding to, and denying, the appeal that was written based on the formal complaint about his actions. The plaintiff's appeal required an impartial party to review it in order for proper due process to be afforded." (ECF No. 1-2 ¶ 17.) |
| Claim Four | Defendant Moore violated Frye's rights under the First Amendment "by refusing to add his chosen clergy members to the list of people whose calls were not recorded or reviewed." (ECF No. 1-2 ¶ 18.) |
| Claim Five | Defendant Rhodes violated Frye's rights under the First Amendment "by enforcing two facility policies that effectively deny [him] the right to privileged telephone conversations with spiritual leadership." (ECF No. 1-2 ¶ 19.) |
| Claim Six | Defendants retaliated against Frye, in violation of Frye's rights under the First Amendment, "by refusing to allow his choice of spiritual leadership |

---

[4] "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof . . . ." U.S. CONST. amend. I.

7

due to the fact that it was his wife, who is a former VCBR employee." (ECF No. 1-2 ¶ 20.)

### III. Analysis

#### A. Claims One, Two, Four, and Five Lack Merit

In Claims One, Two, Four, and Five, Frye asserts overlapping grounds for relief, arguing that Defendants violated his right to freely exercise his religion by (1) denying him the ability to choose, and have privileged phone calls with, a spiritual leader (Claim One); (2) enacting or upholding facility policies that prevented him from having privileged phone calls with spiritual leaders (Claims Two and Five); and (3), refusing to add his chosen spiritual leader's phone number to a list that would prevent his calls with that person from being recorded or monitored (Claim Four). (*See* ECF No. 1-2, at 3–4.) The Court addresses these four claims together because little air separates them from one another, and because each arises under the First Amendment's Free Exercise Clause.[5] As explained below, each claim lacks merit.

---

[5] Throughout the Complaint—although not in the section setting forth his claims—Frye also invokes the Virginia Administrative Code ("VAC") and suggests that its provisions guarantee him the right to "[h]ave opportunities to communicate in private with . . . clergy." (ECF No. 1-2 ¶ 4.) He further identifies VCBR's Facility Instruction No. 214, which states that calls to clergy members "may not be monitored by staff persons." (ECF No. 1-7, at 5.) To the extent Frye believes that these provisions endow him with any tangible rights, he is mistaken, for the failure to abide by the VAC does not amount to a constitutional violation. *See Riccio v. Cnty. of Fairfax*, 907 F.2d 1459, 1468–69 (4th Cir. 1990) (observing that violations of state laws and regulations do not amount to a violation of the United States Constitution).

Assessing a comparable issue wherein prison officials failed to abide by a Kentucky statute that provided for "at least one (1) visit per week by a minister, priest, or rabbi of the inmate's choice," the United States District Court for the Western District of Kentucky found no constitutional violation, holding that "to the extent that [the] Plaintiff relie[d] on Kentucky state law to show that Defendants violated his federal constitutional rights, that argument is without merit." *Baze v. Parker*, No. 5:11-CV-P83-R, 2013 WL 3894961, at *4 (W.D. Ky. July 26, 2013) (citing *Monroe v. McNairy Cnty., Tenn.*, 520 F. Supp. 2d 917, 920 (W.D. Tenn. 2007)).

8

To state a free exercise claim under the First Amendment, a plaintiff must allege facts that suggest that "(1) he holds a sincere belief that is religious in nature" and (2) that Defendants imposed a substantial burden on the practice of his religion. *Whitehouse v. Johnson*, No. 1:10cv1175 (CMH/JFA), 2011 WL 5843622, at *4 (E.D. Va. Nov. 18, 2011) (citing *Hernandez v. Comm'r*, 490 U.S. 680, 699 (1989)). "Government officials impose a substantial burden on the free exercise of religion by 'put[ting] substantial pressure on an adherent to modify his behavior and to violate his beliefs.'" *Massenburg v. Adams*, No. 3:08cv106, 2011 WL 1740150, at *4 (E.D. Va. May 5, 2011) (quoting *Lovelace v. Lee*, 472 F.3d 174, 187 (4th Cir. 2006)) (alteration in original) (some internal quotation marks omitted). Frye's claims fail as to each prong of this test.

### 1. No Sincerely Held Belief Identified

First, the Complaint does not identify Frye's religion or even describe its tenets and requirements,[6] which itself warrants dismissal of Frye's free exercise claims. *See, e.g.*, *Hurley v. Corbin*, No. 7:24-cv-00605, 2025 WL 1962120, at *5 (W.D. Va. July 16, 2025) ("Hurley's filings do not identify his particular religion, much less plausibly suggest that a sincere religious belief has been substantially burdened by the denial of his request for the common fare diet."); *Turner v. Kokolis*, No. JRR-23-0555, 2023 WL 3995668, at *8 (D. Md. June 14, 2023) (dismissing prisoner-filed free exercise claim on the basis that the plaintiff "[did] not identify what religion he practices"); *Johnson v. Duty*, No. 7:22-cv-00340, 2022 WL 2873179, at *2

---

[6] Defendant Wilson offered the most detail with respect to the nature of Frye's religion in a response to one of Frye's complaints, in which he wrote that Frye's wife had, only one month earlier, "received [her] 'Credentials in Ministry' from the Universal Life Church," a process that required only the provision of her "name and email address." (ECF No. 1-5.)

9

(W.D. Va. July 21, 2022) (concluding the same) (citing *Greenhill v. Clarke*, 944 F.3d 243, 253 (4th Cir. 2019))).

### 2. **No Substantial Burden**

Even assuming Frye had identified his religious affiliation, beliefs, or practices, he has not alleged a substantial burden on his ability to exercise them. Indeed, the Complaint is devoid of any factual allegations that Defendants have levied "substantial pressure" on him or pushed him to "modify his behavior" or "violate his beliefs." *Lovelace*, 472 F.3d at 187. Rather, in sum, the Complaint alleges that Defendants have not permitted Frye to have unmonitored phone calls with a minister of his choosing.

Importantly, however, the Complaint makes clear that Defendants have allowed Frye alternative means to commune with a spiritual leader of his choice. By Frye's own admission, he retains the ability to meet in person in VCBR's visitation room with a "family member" he requested be recognized as a member of the clergy. (ECF No. 1-5; *see* ECF No. 1-2 ¶ 10 ("The other listed clergy member could visit, but he would not be allowed private phone calls.").) To this extent, Frye has actually received more accommodating treatment than he is entitled to, for detainees—whether they have been convicted of criminal offenses, have not yet been tried, or are civilly committed—simply do not have a right to commune with the clergy member of their choice. *See Allen v. Toombs*, 827 F.2d 563, 569 (9th Cir. 1987) (citation omitted) (observing that prisoners not entitled to have clergyman of his choice provided in prison); *Payne v. Lucas*, No. 6:12-1904-DCN-KFM, 2012 WL 4847124, at *7 (D.S.C. July 19, 2012) (finding pretrial detainee had no right to access the clergyman of his choice), *R&R adopted in relevant part*, 2012 WL 4846993; *West v. Palmer*, No. C14-4102-LTS, 2017 WL 3574442, at *15 (N.D. Iowa Aug. 17, 2017) (finding no free exercise violation where civilly committed sex offender "cited no

10

authorities supporting his assertion that he has a constitutional right to call his preferred religious officiant").

Because Frye has failed to allege a sufficiently specific sincerely held religious belief or that Defendants have imposed a substantial burden on his ability to exercise that belief, Claims One, Two, Four, and Five will be DISMISSED.[7]

### B. Claim Three Lacks Merit

In Claim Three, Frye asserts that Wilson violated his rights under the Fourteenth Amendment "by responding to, and denying, the appeal that was written based on the formal complaint about his actions." (ECF No. 1, at 3.) Frye believes that his "appeal required an impartial party to review it in order for proper due process to be afforded." (*Id.*)

This claim does not require significant discussion, for it is well established that a state's creation of a grievance procedure does not manufacture a liberty interest on which to base a due process claim. *See Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) ("[T]he Constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily established by a state."). Accordingly, Frye's claim that the appeals process VCBR utilizes with respect to its internal complaint system does not entitle him to relief under § 1983. *See, e.g., Greene v. Olvera*, No. 1:16-cv-01695-LJO-MJS (PC), 2017 WL 68138, at *8 (E.D. Cal. Jan. 5, 2017) (dismissing civil detainee's claim that officials "hampered" his ability to file grievances, observing that "[t]he existence of a grievance process does not create a protected liberty interest

---

[7] Frye makes clear that he seeks relief for alleged violations of his *constitutionally* protected right to freely exercise his religion. (*See* ECF No. 1-2, at 3–4 ¶¶ 15, 16, 18, 19). The Court therefore does not read the Complaint as seeking relief under the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc. Even to the extent Frye does seek to raise such a claim, however, his failure to allege a substantial burden on his ability to exercise his religion would be fatal to that claim. *See* 42 U.S.C. § 2000cc-1(a).

upon which [to] base a claim that [a litigant] was denied a particular result or that the appeals process was deficient" (citing *Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003); *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988))). For this reason, Claim Three will be DISMISSED.

### C. Claim Six Lacks Merit

In Claim Six, Frye contends that Defendants violated his right to be free from retaliation under the First Amendment by "refusing to allow his choice of spiritual leadership," *i.e.*, his wife, who is a former VCBR employee. (ECF No. 1-2, at 4 ¶ 20.) This claim is without merit.

To state a First Amendment retaliation claim, a plaintiff "must allege that: (1) he engaged in protected First Amendment activity; (2) the defendant took some action that adversely affected his First Amendment rights; and (3) there was a causal relationship between his protected activity and the defendant's conduct." *Martin v. Duffy*, 977 F.3d 294, 299 (4th Cir. 2020).

With respect to the first element, the Complaint does not explicitly identify the act that Frye believes amounted to protected activity under the First Amendment, but the Court reads the pleading to suggest it was his act of marrying a VCBR employee. (*See* ECF No. 1-2, at 4 ¶ 20.) To the extent the Court's assumption is correct, Frye has satisfied the first element of a First Amendment retaliation claim. *See Montgomery v. Carr*, 101 F.3d 1117, 1124 (6th Cir. 1996) ("The right to marry is both a fundamental substantive due process and associational right." (citing *Roberts v. U.S. Jaycees*, 468 U.S. 609, 619 (1984); *Loving v. Virginia*, 388 U.S. 1, 12 (1967))).

Nevertheless, the Complaint is deficient because it fails to satisfy the second element, which requires identification of an "adverse action," which is defined as conduct that "would likely deter 'a person of ordinary firmness' from the exercise of First Amendment rights."

12

*Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 500 (4th Cir. 2005) (quoting *Washington v. Cnty. of Rockland*, 373 F.3d 310, 320 (2d Cir. 2004)). "Not all retaliatory conduct tends to chill First Amendment activity, however, and a plaintiff seeking to recover for retaliation must show that the defendant's conduct resulted in something more than a '*de minimis* inconvenience' to [his] exercise of First Amendment rights." *Id.* (internal citation omitted) (quoting *ACLU of Md., Inc. v. Wicomico Cnty.*, 999 F.2d 780, 786 n.6 (4th Cir. 1993)).

Here, although Frye alleges that Defendants refused to allow his wife to act as his spiritual leader, this denial did not result in any change in Frye's ability to exercise his religious beliefs or contact his wife. Indeed, both before and after the rejection, Frye was subject to restrictions on his ability to contact or visit with his wife, which Frye was surely aware of, given the fact that those restrictions were spelled out in the documents he submitted with his Complaint. (*See* ECF No. 1-7, at 8 (providing that former VCBR employees' phone numbers are automatically added to a blocked call list); ECF No. 1-5 (noting that Frye's wife, as a former employee of VCBR, was not permitted to visit VCBR).)

In other words, Defendants' rejection of Frye's request to permit his wife to serve as a minister or clergy member—which was a decision explicitly left to the discretion of VCBR officials[8]—had no tangible effect and did not change the status quo. Under analogous circumstances, the Fourth Circuit rejected a First Amendment retaliation claim in *ACLU of Md.*:

> As of March, 1990, [Wicomico County Detention Center ("WCDC")] did not permit paralegals to conduct contact visits with inmates and the warden was

---

[8] Two portions of FI 214 make clear that VCBR officials were vested with discretion to determine who could or could not serve as a minister or clergy member at the facility. (*See* ECF No. 1-7, at 2 (defining clergy as "[a]n individual ordained for religious duty for which the resident has indicated their affiliation . . . and [who] is approved to provide volunteer services at VCBR"); *id.* at 5 (providing that detainees' requests to have phone numbers added to a "protected category listing and not be recorded or monitored" are subject to review and approval).)

> vested with broad discretion to accommodate or restrict paralegal access under the applicable Maryland regulations . . . . There is no evidence in the record of WCDC's treatment of other paralegals at that time, but all prospective paralegal and attorney visitors were subject to substantial regulation. The warden negotiated an initial accommodation of Chester and the ACLU but later replaced it with a more stringent set of restrictions. These restrictions were well within his discretionary authority over visitors to the facility, DCR 195–1: Authorized Visitors, and many of the conditions parallel the ones applicable to paralegals visiting federal prisons under 28 C.F.R. § 543.16 (letter of authorization and acceptance of responsibility by attorney, personal history statement, pledge to abide by institution rules, denial of visits or correspondence with an inmate if necessary for good order).
>
> The December 1990 change in conditions placed Chester and the ACLU in the same position they were in before March, 1990: subject to the reasonable requirements imposed by the warden upon visits to inmates. We do not find this withdrawal of an accommodation sufficiently adverse to support a [First Amendment retaliation] claim.

*ACLU of Md.*, 999 F.2d at 785–86 (footnote omitted).

Here, Defendants' actions left Frye, like the plaintiffs in *ACLU of Md.*, "in the same position [he was] in before" the rejection. *Id.* at 786. The rejection therefore amounted to a mere inconvenience insufficient to be a constitutionally significant adverse action. *See id.* Because the Complaint fails to meet the "adverse action" element of a First Amendment retaliation claim, it also necessarily fails to satisfy the claim's causation element. Consequently, Claim Six will be DISMISSED.

### IV. Conclusion

For the foregoing reasons, the Motion to Dismiss (ECF No. 8) will be GRANTED. Frye's claims will be DISMISSED. The action will be DISMISSED.

An appropriate Final Order will accompany this Memorandum Opinion.

Date: 2/3/26
Richmond, Virginia

/s/
M. Hannah Lauck
Chief United States District Judge